**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0802n.06
Filed: November 15, 2007

No. 06-4605

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

GENERAL MEDICINE, P.C.,

      **Plaintiff-Appellant,**

v.

MORNING VIEW CARE CENTERS,

      **Defendant-Appellee.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

**BEFORE: BOGGS and KENNEDY, Circuit Judges; JORDAN, District Judge.**[*]

      **LEON JORDAN, District Judge.** General Medicine, P.C. appeals the district court's grant of Morning View Care Centers's motion to dismiss. For the reasons that follow, we affirm the judgment of the district court.

I.

      General Medicine provides medical staffing for nursing homes. Morning View owns at least seven nursing homes in Ohio. In June 1998, the parties entered into a Facility Medical Management Agreement whereby General Medicine would exclusively provide

---

      [*] The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

medical staffing for Morning View's nursing home located in New Philadelphia, Ohio. The New Philadelphia agreement went into effect in March 1999. The initial term was one year, automatically continuing for an indefinite number of three-year periods unless terminated by either party in accordance with the terms of the agreement. Effective May 1, 1999, the parties executed substantially identical Facility Medical Management Agreements for six other Morning View nursing homes.

On April 17, 2003, General Medicine filed a breach of contract complaint against Morning View in Ohio state court. That suit expressly pertained only to the New Philadelphia facility and alleged that Morning View: (1) disregarded the contract's exclusivity provision; (2) allowed physicians onsite who had not been credentialed by General Medicine; (3) failed to make payments; and (4) wrongfully terminated the contract. In November 2003, the case was tried to a jury, which rendered a defense verdict on General Medicine's claims.

In May 2005, General Medicine again sued Morning View, this time in the United States District Court for the Southern District of Ohio. [JA 7]. That suit alleged breach of contract and tortious interference with business relations, expressly pertaining to the six Morning View facilities *other than* New Philadelphia. The federal complaint stated that "in the middle of the three-year term[s]" commencing May 1, 2000, Morning View wrongfully terminated the six agreements. General Medicine further complained that

Morning View: (1) failed to make payments; and (2) prevented, or wrongfully interfered with, General Medicine staff's treatment of Morning View patients.[1]

Morning View filed a motion to dismiss. Citing *claim* preclusion, the district court granted the motion as to the tortious interference claim and the breach of contract claim, but only to the extent that the latter was "based on the eviction of Plaintiff from Defendant's facilities." The remainder of the breach of contract claims, involving Morning View's alleged "failure to (1) pay monthly Medical Director payments, and (2) comply with the termination procedures set forth in the agreement[s]," were dismissed on the grounds of *issue* preclusion. The present appeal followed.

## II.

This panel reviews *de novo* a district court's decision regarding issue and claim preclusion. *See Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994). When determining the effect of a prior state court judgment, the preclusion law of that state is applied. *See Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 663 (6th Cir. 1990).

## III.

Ohio law recognizes the related doctrines of issue and claim preclusion under

---

[1] Although its federal complaint is vague as to the date range within which this alleged conduct occurred, General Medicine complained to Appellee as early as May 2001 "that Morning View is looking to replace the Medical Directors at the other Morning View facilities."

the umbrella term *res judicata*. *See O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007). Claim preclusion, also referred to as estoppel by judgment, "prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *Id.* "[A]n existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995) (emphasis in original) (citation omitted). Under Ohio law, a plaintiff must "present every ground for relief in the first action, or be forever barred from asserting it." *Id.* (citation omitted).

In *Grava*, the Supreme Court of Ohio "expressly adhere[d] to" Sections 24 and 25 of the Restatement of the Law 2d, Judgments. *See id.* Of particular relevance to the instant appeal, the *Grava* court cited the following Restatement language:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . .
>
> . . . The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action. . . . The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff[.]

4

*General Medicine, P.C. v. Morning View Care Centers*, No. 06-4605

*Id.* (emphases omitted).

In the present case, the district court correctly observed that the seven Facility Medical Management Agreements are substantially similar. In our view, they represent "a series of connected transactions." Moreover, by General Medicine's own admission, the complained-of conduct took place "somewhere in the middle of" a three-year term that ended in May 2003. General Medicine was aware of the subject matter of its federal suit prior to the April 2003 filing of the state court complaint. Thus, pertaining to this "series of connected transactions," appellant did not "present every ground for relief in the first action . . . [and is] forever barred from asserting it" in this case. *Grava*, 653 N.E.2d at 229.

We conclude that the entire federal complaint was barred on the basis of *claim* preclusion. As such, we need not address the district court's partial application of *issue* preclusion. We also need not address the fact that the New Philadelphia agreement contains a forum selection clause different than that found in the other six agreements. Our review of the appendix and briefing indicates that General Medicine raised this point for the first time at oral argument. The issue is thus waived. *See Reithmiller v. Blue Cross & Blue Shield of Mich.*, 824 F.2d 510, 511 n.2 (6th Cir. 1987).

For the reasons stated herein, we **AFFIRM**.